John Winston Ono LENNON, Plaintiff,

v.

Elliot RICHARDSON, Attorney General of the United States, et al., Defendants.

John Winston Ono LENNON, Plaintiff,

v.

The UNITED STATES of America et al., Defendants.

Nos. 73 Civ. 4476, 73 Civ. 4543.

United States District Court, S. D. New York.

May 1, 1974.

Leon Wildes, New York City, for plaintiff.

Paul J. Curran, U. S. Atty., for the S. D. of N. Y., Joseph Marro, Asst. U. S. Atty., of counsel, for the United States.

## OPINION AND ORDER

OWEN, District Judge.

Plaintiff John Lennon has moved for an order enjoining various officials involved in the enforcement and administration of United States immigration laws from further proceedings regarding his deportation.[1] An appeal from his deportation order of March 23, 1973 is presently pending before the Board of Immigration Appeals (the "Board").

Plaintiff and his wife entered the United States in 1971 with authority to remain until February 29, 1972. On March 1, 1972 they were advised that their authorization had expired and they were expected to leave by March 15. However, on March 6, concluding they had no intention to leave by March 15, the District Director of the Immigration and Naturalization Service ("INS") commenced deportation proceedings against them. This proceeding came on to be heard before Immigration Judge Fieldsteel. At that time, plaintiff and his wife asserted that the deportation proceedings had been discriminatorily commenced because INS had violated its practice by not allowing them "non-pri-

1. Those officials are the defendants in the two actions Lennon commenced in October 1973 described *infra*.

ority" status.[2]   In this case, the asserted grounds for "non-priority" status were that the wife desired to remain in the United States to endeavor to locate and obtain custody of her child by a former marriage, and plaintiff-husband desired to remain with and assist her.

The Immigration Judge allowed the wife permanent residence,[3] but plaintiff-husband was ordered deported.  The Immigration Judge ruled that his sole function was to determine whether the deportation charge was sustained by sufficient evidence, and finding that plaintiff-husband had been convicted in England upon his plea of possession of "cannibis resin", ruled he was deportable as a matter of law.[4]  The Immigration Judge denied plaintiff's request to terminate the deportation proceedings on the grounds of (1) discriminatory commencement and (2) because of INS' alleged violation of its own practice as regards "non priority" status, stating:

> It is within the District Director's prosecutive discretion whether to institute deportation proceedings against a deportable alien or temporarily to withhold said proceedings. Where such proceedings have begun, it is not in the province of the Immigration Judge or of the Board on Appeal to review the wisdom of the District Director's action starting the proceedings  .  .  .

Plaintiff's appeal from the determination of the Immigration Judge to the Board of Immigration Appeals is *sub judice*.

Thereafter, and in October 1973, plaintiff commenced two actions in this Court.  Action # 1, under the Freedom of Information Act, 5 U.S.C. Section 552, seeks INS information and records relevant to the maintenance by INS of a "non-priority" category of cases and the standards used in determining its applicability.

Action # 2 seeks an order 1) requiring certain government defendants to divulge, pursuant to 18 U.S.C. Sec. 3504, whether or not plaintiff has been the subject of unlawful surveillance and 2) granting a hearing on the question of whether or not the defendants had "prejudged the case against him."

Plaintiff's principal contention is that he is entitled to a stay of all proceedings "until a reasonable time after plaintiff has been furnished with the information and records sought in Action No. 1," on the ground that while he is not subject to deportation until after a final decision of the Board,[5] and review by the Court of Appeals,[6] he will be forced to go to the Court of Appeals on an inadequate and prejudicial record in the event the decision of the Board is against him.[7]

There seems little question that the District Court has jurisdiction to enjoin agency action for violation of a Freedom of Information Act claim.  Renegotiation Board v. Bannercraft Clothing Co., 1 U.S. 415, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); Sears Roebuck & Co. v. N.L.R.B., 153 U.S.App.D.C. 380, 473 F.2d 91 (1973).  However, such power is to be exercised only upon a clear showing of irreparable injury. *Sears Roebuck, supra,* at p. 93 states:

> .  .  . it is only in extraordinary circumstances that a court may, in the sound exercise of discretion, intervene

---

2. "Non-priority" refers to a category of cases in which the INS will defer the departure of an alien indefinitely and take no action to disturb his immigration status on the ground that such action "would be unconscionable because of the existence of appealing humanitarian factors."

3. Pursuant to Section 245 of the Immigration and Nationality Act, 8 U.S.C. Sec. 1255.

4. Section 212(a)(23) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1182(a)(23).

5. 8 C.F.R. Section 3.6(a) (1973).

6. 8 U.S.C. Section 1105a(a)(3).

7. Plaintiff points out that review before the Court of Appeals "shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive;" 8 U.S.C. Section 1105a(a)(4).

to interrupt agency proceedings to dispose of a single, intermediate or collateral issue. A cogent showing of irreparable harm is an indispensable condition of such intervention.

On the facts before me, there is no such showing. The plaintiff cannot be deported as a matter of law until a final determination has been made herein by the Court of Appeals, unless that Court so orders. The information and records sought have been held to be irrelevant as a matter of law by the Immigration Judge.[8] If that ruling is proper, there is no basis for an injunction to permit plaintiff to obtain these records to introduce in that proceeding. If it is improper, either the Board or the Court of Appeals may reverse with appropriate directions to the Immigration Judge to receive and consider such proof.[9] Thus plaintiff will have his review and be protected against improper deportation during its course.

The plaintiff alternatively seeks this preliminary injunction pending the outcome of Action # 2 on the ground that if the injunction is not granted, he will have no recourse from his asserted "prejudgment" herein and/or the claimed use of tainted evidence against him.

■ However, plaintiff, in his very limited presentation on this ground, has made no showing that any Immigration official involved in this proceeding has not exercised his independent judgment,[10] and the Board has yet to rule. Any claim of prejudgment is necessarily premature when an agency's appellate body has yet to act.[11]

Nor has plaintiff demonstrated a need for a stay of the Immigration proceedings until defendants affirm or deny the use of illegal evidence against plaintiff. Judge Fieldsteel's opinion is based solely on the record of Lennon's conviction in England.[12] Plaintiff has, in any event, specified no evidence admitted in the proceedings which might be inadmissible as the product of an unlawful act and therefore I see no reason to delay further proceedings. Consequently, I decline to grant a preliminary injunction on the alternative grounds urged as to Action # 2.

For the foregoing reasons, the plaintiff's motion for a preliminary injunction is denied.

So ordered.

8. I note that even if the requested information should prove to be relevant in a way overlooked by the parties or the Court, plaintiff is not entirely without remedy. 8 C.F.R. Sec. 3.8 provides a procedure for the reopening of a Board determination upon motion of a party. If the Board should fail to permit plaintiff to reopen and in doing so commits an abuse of discretion, judicial review is available in the Court of Appeals. Schieber v. Immigration and Naturalization Service, 461 F.2d 1078 (2d Cir. 1972). The existence of this procedure further supports my view that the plaintiff will not suffer irreparable injury by the continuation of Board proceedings.

9. In the event that the position of the Immigration Judge is held to be incorrect and proceedings to determine the merits of plaintiff's selective prosecution claim proceed without awaiting the release of the information to which plaintiff is entitled in Action #1, I will, at that point, reconsider plaintiff's application for a stay.

10. Exhibit "D" to the complaint in Action #2, while provocative, is not a showing.

11. Given a proper showing, a hearing on prejudgment might be appropriate after the Board's determination. See U. S. ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S. Ct. 499, 98 L.Ed. 681 (1954). To stay the proceedings at this point would be improperly disruptive, even assuming a proper showing had been made.

12. There can be, and is, no claim that the evidence of the conviction was illegally obtained.